# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| FREDY ISMAEL CHILEL CHILEL, | |
| Petitioner, | No. C25-4053-LTS-KEM |
| vs. | |
| CHAD SHEEHAN, et al., | **MEMORANDUM OPINION AND ORDER** |
| Respondents. | |

## I. INTRODUCTION

This case is before me on petitioner Fredy Ismael Chilel Chilel's petition (Doc. 1) for habeas corpus under 28 U.S.C. § 2241. Chilel Chilel is facing removal proceedings as an acknowledged Guatemalan citizen who allegedly entered the United States unlawfully around 2019. Doc. 1 at ¶19. He is currently detained at the Woodbury County Jail in Sioux City, Iowa, and an Immigration Judge (IJ) has classified him as being ineligible for bond. Doc. 1 at ¶11; Doc. 8-7 at 1.

Chilel Chilel challenges his bond ineligibility classification as a Fifth Amendment violation and ultra vires regulation. On initial review I entered an order (Doc. 2) directing respondents (collectively, the Government)[1] to respond to Chilel Chilel's petition, which it did (Doc. 4). Chilel Chilel has replied (Doc. 9). Oral argument is not necessary. *See* LR 7(c).

---

[1] Although the Government's reply was filed on behalf of only the federal respondents, and not Chad Sheehan, the Woodbury County Sheriff (Doc. 4 at 3 n.1), this order will apply to all respondents.

## II. BACKGROUND

Chilel Chilel admits to being a Guatemalan who has been in the United States since December 2019. Doc. 1 at ¶19. The day after he entered the country, he was confronted by an immigration officer. Doc. 8-2. The officer charged him as having illegally entered the country without being admitted and provided a notice to appear before an IJ. Doc. 8-2. A deportation officer responsible for Chilel Chilel's current case declares that the hearing happened in April 2020 and an IJ granted a change of venue. Doc. 8-1 at ¶17. Chilel Chilel represents that he has been residing in Iowa, learned English, graduated from high school, earned a commercial driver's license, pays his taxes and is expecting a child in the spring. Doc. 1 at ¶¶30–31.

In July 2025, Chilel Chilel and his roommate got into an argument that, in Chilel Chilel's words, "led to a minor physical altercation." *Id.* at ¶33. This led to Chilel Chilel's arrest and his ultimate plea of guilty to simple assault—a misdemeanor. *Id.* at ¶¶34–35. While Chilel Chilel was detained on his state charge, Immigration and Customs Enforcement (ICE) became aware of his presence and lodged a detainer against him, ultimately taking him into custody. Doc. 8-1 at ¶¶36–37.

Chilel Chilel was brought before an IJ, who initially determined—over an objection from the Department of Homeland Security (DHS)—that Chilel Chilel was eligible for bond under the discretionary detention system of 8 U.S.C. § 1226(a). Doc. 8-6 at 4–7. The IJ, having considered Chilel Chilel's individualized circumstances, found that he posed no danger to the community and that a $6,000 bond would assuage any flight concerns. *Id.* at 7. DHS appealed, automatically staying the bond determination, see 8 C.F.R. § 1003.19(i)(2), and argued that the IJ failed to properly classify him as an alien subject to mandatory detention without bond. Doc. 8-5 at 4 (citing 8 U.S.C. § 1225(b)(2)). At that point, Chilel Chilel filed his petition (Doc. 1) for habeas corpus contending that his continued detention is unconstitutional.

On September 5, 2025, shortly before Chilel Chilel filed his petition, the Board of Immigration Appeals decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025),

in which it held that any alien not formally admitted into the United States is perpetually "seeking admission" and therefore subject to mandatory detention. *Id.* at 221, 229. As Chilel Chilel was never formally admitted into the United States, his situation is analogous to the facts in *Matter of Yajure Hurtado*. Thus, DHS moved for the IJ to reconsider. The IJ agreed, reclassified Chilel Chilel's detention as being under § 1225(b)(2) and cancelled the $6,000 bond determination. Doc. 8-7 at 1.

### III. ANALYSIS

#### A. *Statutory and Regulatory Framework*

This court, and many others, have already explained the underlying statutory framework governing this matter. *See, e.g.*, *Giron Reyes v. Lyons*, ___ F. Supp. 3d ___, No. 25-cv-4048, 2025 WL 2712427, at *1–2 (N.D. Iowa Sept. 23, 2025); *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695, at *3–4 (E.D. Mich. Nov. 7, 2025). Under 8 U.S.C. § 1225(b)(2), an "applicant for admission"[2] who is "seeking admission" must be detained pending removal proceedings without bond. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–88. By contrast, aliens detained under 8 U.S.C. § 1226(a) are given an individualized bond assessment. *Id.* at 288.

Most courts that have addressed the scope of § 1225(b)(2) have separated from its text "applicants for admission" and those "seeking admission." *E.g.*, *Ramirez Valverde v. Olson*, No. 25-cv-1502, 2025 WL 3022700, at *2–3 (E.D. Wis. Oct. 29, 2025); *Romero Perez v. Francis*, No. 25-cv-8112, 2025 WL 3110459, at *2 (S.D.N.Y. Nov. 6, 2025). In doing so, they have understood the present tense "seeking admission" to limit the section to applicants for admission attempting to enter, or having recently entered, the United States. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress'

---

[2] Defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

use of a verb tense is significant in construing statutes.").[3] As Judge Ho in the Southern District of New York put it:

> For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.

*Lopez Benitez v. Francis*, ___ F. Supp. 3d ___, No. 25-cv-5937, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025).

The Government argues this majority view is wrong. It instead insists that all aliens are "seeking admission" until they have been formally admitted into the United States, regardless of how long they have resided in the country. Doc. 4 at 13. Consequently, "applicants for admission" must always be "seeking admission," effectively making the terms synonymous.

At least one court has adopted the Government's interpretation. *See Cirrus Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *8 (E.D. Wis. Oct. 30, 2025).[4] To the Government's credit, had Congress wanted to be clearer about the limits on

---

[3] Just as someone who "is charged with" a crime (present tense) no longer bears that status after their charges are resolved. *See Helbrum v. Williams*, No. 25-cv-349, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025) (interpreting 8 U.S.C. 1226(c)(1)(E)).

[4] I am aware of three other courts finding in the Government's favor under these circumstances. However, each court focused on whether the petitioners were "applicants for admission" without considering whether they were also "seeking admission." *See Chavez v. Noem*, ___ F. Supp. 3d ___, No. 25-cv-2325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump*, ___ F. Supp. 3d ___, No. 25-cv-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Barrios Sandoval v. Acuna*, 25-cv-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025).

4

§ 1225(b)(2), it could have used "arriving" as it had in another provision of the statute.[5] *See* 8 U.S.C. § 1225(b)(1)(A). But I am left to construe the statute as it is written, even if "Congress could have expressed itself more clearly." *Torres v. Lynch*, 578 U.S. 452, 472 (2016). In doing so, I cannot defer to the agency's interpretation when a better reading exists. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Here, giving effect to every word in the section, as is "one of the most basic interpretive canons," I must reject reading in the superfluousness that the Government requests. *Corley v. United States*, 556 U.S. 303, 314 (2009).

Context matters as well. *See Pulsifer v. United States*, 601 U.S. 124, 133 (2024). And the context surrounding § 1225(b)(2) further supports the term "seeking admission" limits the section's scope. The classes of people exempted from § 1225(b)(2) are all subcategories of arriving aliens, such as "crewm[e]n" and "stowaway[s]." 8 U.S.C. § 1225(b)(2)(B). Throughout § 1225 are repeated references to aliens entering the country. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (establishing screening for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). Its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

Even § 1225(b)(1)(A)(iii)(II), a subsection giving the Attorney General discretion to expand the group of aliens subject to summary removal proceedings who have not been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," is not so clear-cut as the

---

[5] Just as it could have left out the present tense verb apparently confounding so many district courts. *See, e.g.*, *Romero Lopez v. Noem*, No. 25-cv-16890, 2025 WL 3101889, at *3 (D.N.J. Nov. 5, 2025) (collecting cases).

Government suggests. While the Government uses the provision to show how § 1225 is sometimes applicable to a term of years, it equally shows built-in limits to the statute's scope based on how long an alien has been in the United States. All this to say that the theme of 8 U.S.C. § 1225 is the timing of when an alien arrived in the country. And as I understand the Government's interpretation, it asks me to pluck out one subsection from the statute to say only § 1225(b)(2) is unmoored to that theme.

The interplay between § 1225 and § 1226 is another context clue cutting against the Government's interpretation. For one, it is not absurd—one might even call it intuitive—for Congress to assign different risk factors to recently arrived aliens and those who have been in the country for years, allowing the latter group a chance at bond. This interpretation is bolstered by the recent Laken Riley Act amendment. Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). In that amendment, Congress expanded the class of non-bondable aliens under § 1226(c) to include unadmitted aliens charged with, arrested for, convicted of or having admitted to having committed certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). If all unadmitted aliens are already subject to mandatory detention under § 1225(b)(2), what purpose or need would the Laken Riley Act amendment have? The Government claims it is to limit the Attorney General's discretion if she "elects" to detain an alien under § 1226(a), but who would also qualify under § 1225(b)(2). Doc. 4 at 16. However, Congress already limited such discretion when it drafted § 1225(b)(2) by providing that aliens who meet the section's criteria "shall be detained."

To be clear, I am ruling solely on whether § 1225(b)(2) applies to Chilel Chilel, not whether § 1225(b)(2) and § 1226(a) overlap, or which section is better suited for his circumstances. *Cf.* Doc. 4 at 12 n.5. I find that Chilel Chilel, having been in the United States for almost six years at this point, does not meet the criteria to fall under § 1225(b)(2). Instead, he falls squarely within the scope of § 1226(a).

## B. Constitutional Challenges

Having rejected the Government's justification for continuing to detain Chilel Chilel, there remains a question of whether his continued detention demands habeas corpus relief. Such relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petitioner bears the burden to prove by a preponderance of the evidence that his detention is unlawful. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

Chilel Chilel alleges that his continued detention violates his substantive and procedural due process rights, as well as being an ultra vires regulation.[6] His procedural due process and ultra vires regulation contentions, however, challenge the automatic stay instituted against the IJ's initial bond determination. Because the IJ has since reexamined the bond determination and reclassified Chilel Chilel as ineligible for bond, the constitutionality of the automatic stay is now moot. *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 650 (8th Cir. 2025) (an issue is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party"). This leaves only Chilel Chilel's substantive due process claim.[7]

The Due Process Clause extends to all persons in the United States regardless of citizenship status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). Its substantive aspect looks at the Government's rationale to test whether it had a compelling reason to deprive an individual of a fundamental right. *Reno v. Flores*, 507 U.S. 292, 303 (1993). "Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v.*

---

[6] He also raised an Administrative Procedure Act claim for the first time in his reply. Doc. 9 at 6. That late-asserted argument is waived. *Mahaney v. Warren Cnty.*, 206 F.3d 770, 771 n.2 (8th Cir. 2000) (per curiam).

[7] Chilel Chilel's substantive due process challenge is to "[t]he government's application of the automatic stay regulation and continued detention of Chilel Chilel." Doc. 1 at ¶ 66. As noted above, the challenge to the automatic stay is moot, so I will address only his objection to his continued detention.

7

*Louisiana*, 504 U.S. 71, 80 (1992)). Thus, detention violates an individual's liberty interest "unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (emphasis in original; citations and quotation marks omitted). Although alleged illegal aliens may be detained pending removal proceedings, *Demore v. Kim*, 538 U.S. 510, 531 (2003), that alone does not constitute a special justification for continued detention, even when an alien is found to be removable, *Zadvydas*, 533 U.S. at 690–91; *Demore*, 538 U.S. at 532 (Kennedy, J., concurring).

On this record, and as-applied to Chilel Chilel, I find that his continued detention without the opportunity to post bond violates his substantive due process rights. It is true that detention may be necessary to give "immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity." *Jennings*, 583 U.S. at 286. But here, immigration officials *had* the time to make an individualized assessment of Chilel Chilel's circumstances, finding that he posed no danger to the community and that a $6,000 bond would assuage any concerns of flight. Even though the IJ since retracted his bond determination, that decision was predicated on the misapplication of § 1225(b)(2), not any new facts changing the risk calculus. The record before me simply does not establish any special justification to justify Chilel Chilel's continued detention. Thus, his right to substantive due process is being violated and this violation is properly remedied by a writ of habeas corpus.

## IV. CONCLUSION

For the reasons set forth herein, Fredy Ismael Chilel Chilel's petition (Doc. 1) for a writ of habeas corpus is **granted**. Within **14 days** from the date of this order, respondents are **directed** to either (1) reinstate his $6,000 bond or (2) hold a new bond

8

determination hearing in which Chilel Chilel is not deemed ineligible for bond under 8 U.S.C. § 1225(b)(2).

**IT IS SO ORDERED** this 12th day of November, 2025.

_____
Leonard T. Strand
United States District Judge